**In re RULE, LTD., Debtor.**

**Bankruptcy No. 84–00137.**

United States Bankruptcy Court,
D. Hawaii.

June 6, 1984.

Alan Okamoto, Hilo, Hawaii, for County of Hawaii.

Paul M. Clark, Hilo, Hawaii, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION TO LIFT STAY; AND ORDER

JON J. CHINEN, Bankruptcy Judge.

On March 26, 1984, the County of Hawaii ("County") filed a Motion for Relief From Automatic Stay. A preliminary hearing was held on April 3, 1984. By stipulation, the final hearing was held on May 8, 1984, at which time Alan Okamoto, Esq., represented the County and Paul Mark Clark, Esq., represented Rule, Ltd. ("Debtor"). The Court, having heard and considered all of the evidence and the record in this case, makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On March 21, 1984, Petitioners Carl Duane Carlsmith, Nelle Wood Carlsmith, and Gertrude Lambert ("Petitioners") commenced these proceedings by filing an involuntary petition under Chapter 11 of the Bankruptcy Code.

2. At the preliminary hearing held on April 3, 1984, Carl Duane Carlsmith, as the President-Treasurer, sole director and sole stockholder of Debtor, stipulated to an Order for Relief which was entered on April 20, 1984.

3. Debtor is a Hawaii corporation and the County is a municipal corporation of the State of Hawaii. The County created the County of Hawaii Improvement District No. 11 ("Improvement District") in 1972 to raise the funds necessary to construct roadway, water and street lighting facilities to service 860 lots located in Waiohinu, Ka'u, Hawaii.

4. Upon the formation of the Improvement District, the County imposed assessment liens upon all of the lots within the Improvement District including those 27 lots to which title is now held by Debtor. The assessments due on each lot were payable in annual installment payments of principal and interest through 1987. Defaulting owners are not personally liable for the amount of the assessment; the assessment applies solely as a lien against the lot assessed.

5. The sole statutory remedy available for the enforcement of the Improvement District assessment lien upon default by the owners of lots in the Improvement District is a non-judicial foreclosure sale. The sale is conducted by the Finance Director of the County under the same terms and conditions as those applicable for the sale of real property for failure to pay State of Hawaii Real Property Taxes. Upon sale of a lot at a non-judicial foreclosure sale, the defaulting owner has the statutory right to redeem the lot sold from the buyer at said foreclosure sale for a one year period after the date of sale.

6. Debtor appears as owner of record of 27 lots in the Improvement District. The amount due on those lots for delinquent Improvement District installments as of March 22, 1984, was $221,670.00. Penalty accrues on those lots at the rate of $2,897.00 per month on delinquent installments.

7. After its incorporation in July of 1983, Debtor listed lots for sale with a real estate broker who worked full time at selling lots in the Improvement District. The broker had sold one lot for Debtor through April, 1984 for a price between $16,000.00 to $18,000.00 which netted Debtor $7200.00. Prior to that time, the lots had been listed for sale for at least two years, with two sales in that time, without much cash benefit to Debtor.

8. In March 1982, the County, as a part of establishing the solvency of the Improvement District waived approximately $2,100,000.00 of $2,400,000.00 in penalty accrued because of nonpayment of assessment installments.

9. The County called for redemption of all outstanding Improvement District No. 11 bonds as of November 1, 1983. Following the bond redemption, the County cancelled the future assessment installments and waived the 1983 assessment install-

ment. The County also waived fifty percent (50%) of penalty accrued on delinquent assessment installments from March, 1982 through September, 1983.

10. The penalty waivers and cancellation of the 1983 installment have substantially reduced the outstanding assessment delinquencies against Debtor's 27 lots. In addition, the cancellation of the installments due in 1984–1987 have terminated any future assessment installment obligations. The benefits to Debtor's lots have occurred because of payments made on other lots. Payments on Debtor's lots have not been made for more than eight (8) years.

11. The County has enacted a resolution and ordinance controlling collection of the outstanding assessment delinquencies and cash distributions to various lot owners. The collections and disbursements would result in each lot in the Improvement District paying a share of the total cost of the Improvement District in proportion to the original assessments on each lot. The County allocated to those lots whose assessment payments were delinquent the additional bond interest and other expenses caused by the delay in payment. The cash distributions would include entitlements because of 1983 installments paid and because of penalty paid in excess of that which was not waived. The cash distributions are based upon the cash actually paid to the County for the Improvement District for the affected lots and do not include any allowance for interest upon the amounts to be refunded.

12. Debtor was given advance notice of the March 22, 1984 foreclosure sale.

13. Mr. Carlsmith stated in his deposition of March 30, 1984, received into evidence by stipulation, that an involuntary Petition was filed in this case because there was not enough time to file a plan and list of creditors required for a voluntary Chapter 11 proceeding. Carlsmith further stated at the deposition that a plan would probably be filed within 15 to 20 days of March 30, 1984. However, to date no plan has been filed.

14. Petitioners failed to served a copy of the Involuntary Petition upon Rule, Ltd. until the preliminary hearing on April 3, 1984, despite the knowledge and position of Mr. Carlsmith as the sole shareholder, Director and a corporate officer of Debtor.

15. Debtor did not retain an attorney by April 6, 1984 as previously ordered by this Court. No notice of appearance was made by any attorney until the appearance of attorney Paul Mark Clark at the time of the final hearing on the County's Motion to Lift Stay.

16. Debtor was ordered to file his schedules by June 5, 1984 but has not yet done so.

## CONCLUSIONS OF LAW

1. The evidence and record in this case show that the primary purpose of the petition for relief was to delay the foreclosure sale which had been set for March 21, 1984.

2. Mr. Carlsmith is the President-Treasurer, sole director and sole stockholder of Debtor corporation. He has knowledge as to the assets and liabilities of Debtor. However, instead of filing an original voluntary petition in bankruptcy, he joined two other entities in filing an involuntary petition, alleging that he could not prepare the list of creditors in time for the filing of the involuntary petition.

3. At the preliminary hearing held on April 3, 1984, the Court directed Mr. Carlsmith to obtain an attorney for Debtor by April 6. This was to avoid a request for a continuance at the final hearing based on insufficient time to prepare for the hearing.

4. However, Mr. Carlsmith did not engage the services of Mr. Clark until a day or so before the hearing. As expected, Mr. Clark stated that he was not sufficiently familiar with the case to proceed. However, when the Court stated that the stay would be automatically lifted, if the hearing was delayed, upon direction of Mr. Carlsmith, Mr. Clark chose to proceed.

The hearing for Debtor was actually controlled by Mr. Carlsmith, not Mr. Clark.

5. The County has taken steps to terminate the Improvement District. The Improvement District Bonds have been redeemed and the assessments on all except the 27 lots have been paid. It is necessary that the county collect the outstanding assessment delinquencies so that each lot carries its fair share of the Improvement District expenses. Since the other lots have thus far paid the share of the expenses of the 27 lots, there must be a refund to those other lots to fairly allocate the expenses. The County needed the funds expected from the March 22, 1984 foreclosure sale to provide the funds necessary to handle the refunds.

6. Debtor and its predecessors have had ample opportunity since 1975 to clear the delinquent assessments. The penalty waivers and installments cancellations have substantially lowered the amounts which would otherwise be due on the assessments.

7. Although Mr. Carlsmith stated that he hoped to market the lots at approximately $20,000.00 to $22,000.00 per lot, the past sales record in the Improvement District does not support such hope of a "pie in the sky" return. Debtor's prior sales efforts show a very limited and uncertain ability to market the lots and Debtor has failed to file a plan of reorganization by mid-April as promised by Mr. Carlsmith at his March 30, 1984 deposition.

8. Based on the foregoing, the Court finds that the petition in bankruptcy was not filed in good faith and that it was filed merely to delay the foreclosure sale which had been scheduled for March 22, 1984. The Court further finds that Debtor's failure to file its schedules and statements of Affairs in compliance with the provisions of the Bankruptcy Code and the order of this Court is inexcusable.

For the foregoing reason, the Court hereby lifts the stay to permit County to proceed with the state foreclosure sale.